# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| AMY HARRIS, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>   v.<br><br>LAZ PARKING LTD, LLC,<br>LAZ KARP ASSOCIATES, LLC,<br><br>Serve:  ONE FINANCIAL PLAZA, 14TH<br>        FLOOR, HARTFORD, CT, 06103,<br>        United States<br><br>           Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No. _____<br><br><br><br><br><br><br><br><br>)   JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff Amy Harris, by and through her counsel of record, individually and on behalf of others similarly situated, states and alleges the following claims against Defendants LAZ Parking LTD, LLC ("LAZ LTD") and LAZ Karp Associates, LLC ("LAZ Karp," collectively, "LAZ").

## NATURE OF ACTION

1.      This is a class action to recover amounts LAZ charged Plaintiff and other proposed class members in excess of the amounts agreed to in their contracts. The terms of Plaintiff's agreement with LAZ are materially the same as agreements held by proposed class members.

2.      LAZ is a national parking company that operates parking facilities throughout the United States. In its parking lots, LAZ uses "LAZ Parking" signs which provide an offer to customers for permission to park in exchange for a designated hourly rate to be paid by the customer (the "LAZ Signs").

3.     Other than the specified hourly rate, and in some instances applicable taxes, LAZ

Signs do not disclose any fee or surcharge in exchange for the parking session as part of their offer:



4.     Once customers accept the offered rate and park, LAZ directs the customer to make

a cashless payment using an online payment system (the "Payment System"). LAZ requires

customers to access the Payment System using a lot-specific "QR Code" or text message number

using their mobile phones or other electronic device.

5.     Despite the set terms offered on the LAZ Signs and after acceptance when the

customer parks, LAZ then adds on an additional "Service Fee" required to make payment through

the Payment System.

6.     Like other fees tacked on to transactions when a customer is trying to make

payment, the Service Fee imposed by LAZ is a form of "junk fee" that, according to the Federal

Trade Commission, costs consumers throughout the country billions of dollars per year in unexpected costs.

7.      LAZ imposed the Service Fee on Plaintiff and thousands of proposed class members, extracting millions of dollars from them in violation of the terms of their contracts.

8.      In this case, Plaintiff and the proposed class members formed a contract with LAZ that prohibits the Service Fee imposed. Accordingly, they can adjudicate their claims based on common law contract claims applicable in all 50 states.

9.      Plaintiff brings this case as a class action under Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of other similarly situated individuals. Plaintiff seeks to recover damages, as well as declaratory and injunctive relief, both individually and on behalf of the proposed class.

## PARTIES

10.     Plaintiff Amy Harris resides in Kansas City, Missouri, and it is a citizen of the State of Missouri.

11.     Defendant LAZ Parking LTD, LLC, is a limited liability company organized under the laws of the State of Connecticut. Its sole member is LAZ Karp Associates, LLC.

12.     LAZ Karp Associates, LLC, is a limited liability company organized under the laws of the State of Connecticut. Its members are LAZ Investments, LLC, New LAZ Karp Partners, Inc., and AMF Oscar Investment, LLC.[1]

## JURISDICTION AND VENUE

---

[1]      LAZ Investments, LLC is a citizen of the State of Connecticut because its member, Alan Lazowski, resides in and is a citizen of the State of Connecticut. New LAZ Karp Partners, Inc. is a citizen of the State of Connecticut, the location of its principal place of business. Lastly, AMF Oscar Investment, LLC is a citizen of the State of New York because, on information and belief, its sole member is Argo Infrastructure Partners, a citizen of the State of New York.

13.     This Court has jurisdiction over all causes of action asserted under 28 U.S.C. 1332(d) because this is a class action with diversity of citizenship between parties and the matter in controversy exceeds $5,000,000.

14.     Venue is proper in this Court under 28 U.S.C. 1391 because a substantial part of the events giving rise to the claims occurred in this judicial district.

15.     This forum is also proper because, as pled in the alternative claim under Count II of this Class Action Complaint, there are Terms and Conditions that might apply to this dispute. Section XVIII of the Terms and Conditions states that the exclusive jurisdiction for the alternative claims is in the state courts of Connecticut or of the United States District Court for the District of Connecticut, and it provides that all actions or proceedings relating to use of the Payment System shall be litigated in such courts.

## FACTUAL BACKGROUND

### I.      LAZ LTD and LAZ Karp

16.     LAZ is one of the largest privately owned parking companies in the United States. It operates, owns, manages, and leases parking facilities. It operates over 1.2 million parking spaces in more than 400 cities.

17.     On information and belief, LAZ LTD is wholly owned and controlled by LAZ Karp.

18.     In their annual registration filings, LAZ LTD and LAZ Karp maintain the same business email address of "legalmail@lazparking.com." LAZ LTD and LAZ Karp maintain the same principal place of business of One Financial Plaza, 14th Floor, Hartford, Connecticut 06103, with LAZ Karp reporting its address as in the "Care of" LAZ LTD.



19.    On information and belief, in nearly every parking lot it operates, LAZ invites customers to park by displaying LAZ Signs that contain the terms of its offer.

20.    On information and belief, LAZ Karp has a direct role in the creation, implementation, and display of LAZ Signs in the parking lots. Furthermore, on information and belief, LAZ Karp has a direct role in the operation of LAZ LTD, including operation of a 401k program for LAZ employees.

21.    To ensure the strength and consistency of its brand across the nation, LAZ imposes standards and guidelines regarding the imagery and information contained in LAZ Signs.

22.     Although LAZ Signs differ in size and appearance, they are materially the same regarding their offer for the cost of parking. The stated offer is a set rate for a certain period of time the customer parks. The stated rate may or may not include applicable taxes. The "Service Fee" is not disclosed in the LAZ Signs.

 

23.     The information contained in LAZ Signs serves as a general offer to the public, offering customers permission to park in exchange for an obligation to pay at the specified parking rate.

24.     Customers assent to the offer contained in the LAZ Signs by parking in the lot, after which they are responsible for making payment based on the duration of time parked at the stated rate.

25.     LAZ Signs do not identify any other basis for fees or charges beyond the time-based parking rate and applicable taxes, if any.

**II.    The LAZ Payment System**

26.     To collect payment, LAZ developed the Payment System, which controls cashless payments through the internet.

27.     LAZ LTD had an affirmative and direct role in creating and administering the Payment System, along with Defendant LAZ Karp.

28.     LAZ utilizes the Payment System in most of their parking lots (the "Parking Lot(s)"), eliminating traditional methods of payment such as through parking attendants, meters, or ticketed gates.

29.     In these Parking Lots, the Payment System is the sole method by which customers can pay the agreed rate.

30.     LAZ directs customers to access the Payment System through their mobile phones or other electronic devices, providing information such as a lot-specific "QR Code" or a text message number near each parking stall.

31.     This information prompts customers to download a mobile app LAZ developed for iPhone and Android users, which provides an interface for the Payment System. In addition, customers can access the Payment System through the LAZ website, www.lazparking.com, which provides a similar interface.

32.     The Payment System prompts the customer to specify the duration of the agreed parking session and to input vehicle information, personal information (name, email, and mobile number), and credit or debit card information for payment.

33.    The Payment System automatically populates the cost of parking based on the duration of the parking session as offered and agreed by the customer and LAZ.

34.    However, rather than charge the cost of parking based on the agreed parking rates in the LAZ Signs, LAZ applies an additional "Service Fee."

35.    By failing to limit the cost of parking based on the parking rates offered in the LAZ Signs, LAZ knowingly causes the amount charged to be higher than what was agreed by the customer and LAZ.

36.    The LAZ Signs do not disclose or authorize LAZ to charge customers an additional "Service Fee" beyond the stated parking rate.

37.    The higher junk fees charged by LAZ cause the cost of parking to exceed the amount explicitly offered in the LAZ Signs. It is a breach of contract each time LAZ uses the Payment System to apply and charge an additional "Service Fee" to customers beyond the offered and accepted rate.

38.    As a direct and proximate result of LAZ's breaches, customers such as Plaintiff and the proposed class have been damaged.

## III.    Plaintiff Amy Harris

39.    On December 21, 2022, Harris parked in a parking lot operated by LAZ. The LAZ Sign offered four hours of parking for $6.00. The LAZ Sign did not disclose any other stated basis for applying a Service Fee to the parking session offered.

40.    Harris parked in the LAZ lot and, as required by LAZ, paid for the parking session through the Payment System.

41.     In order to make payment on the contract between Harris and LAZ, LAZ charged Harris an additional "Service Fee" of $0.37 in excess of the agreed $6.00 parking rate offered in the LAZ Sign, for a total of $6.37.

42.     By invoicing and charging this additional Service Fee to Harris, LAZ breached its contract with Harris for the parking session, causing her damages in the amount of the Service Fee charged.

**IV.     The LAZ Terms and Conditions**

43.     As part of the Payment System, LAZ provides links to certain documents in small type font at the bottom of the electronic interface. The language states: "By selecting the PAY button you agree to our Terms & Conditions, Privacy Policy and License Plate Recognition Policy."

44.     These documents are linked to and contained on the LAZ LTD app or the LAZ website.

45.     The Terms & Conditions state that the "LAZ online parking reservation system (the "System") . . . is owned and operated by LAZ KARP Associates, LLC[.] ('LAZ')." It further provides that "access to, and use of, the System and the services, products and networks found at or related to the System (referred to collectively as the 'Service') are subject to the following Terms and Conditions."

46.     Although the Terms & Conditions define "LAZ" as "LAZ Karp Associates, LLC," both LAZ LTD and LAZ Karp acted in concert to develop and use the Payment System, and both prepared, disseminated, and seek to apply the Terms & Conditions regarding use of the Payment System.

47.     In a section titled "V. Pricing and Availability," LAZ represents in the Terms & Conditions that "<u>LAZ, in providing the Service, does not</u> set the parking prices, operate the parking facilities, determine parking availability, or <u>charge you for any parking fees or services provided</u>." (emphasis added).  It further states, "In all cases the parking arrangement will be governed by the agreement made between the Licensor and the Licensee as posted at the parking facility location or provided to the Licensee by the Licensor."

48.     LAZ further represents in the Terms & Conditions that "Licensors have represented that they have full authority to license to the general public, the parking they propose to license, without restriction."

49.     The Terms & Conditions define "Licensees" to be "those in need of short-term parking," and "Licensors" as "owners, managers, or lessees of parking facilities." Accordingly, LAZ LTD and/or LAZ Karp is a "Licensor" within the meaning of the Terms & Conditions.

50.     The Terms & Conditions further provide that "[t]he parties consent to the exclusive jurisdiction of the state courts of Connecticut or of the United States District Court for the District of Connecticut and irrevocably agree that all actions or proceedings relating to this Agreement will be litigated in such courts."

51.     If the terms of the LAZ Signs are a unilateral offer that are accepted by performance (i.e., parking in the parking lot), the subsequent Terms & Conditions lack consideration and are inapplicable.

52.     On information and belief, LAZ considers the LAZ Signs sufficient to form a contract once the customer parks, because it seeks to collect and has collected parking fees from customers who park but never pay through the Payment System.

53.     In the alternative, if the Terms & Conditions are part of the contract, LAZ LTD and LAZ Karp breach the contract by imposing a "Service Fee" contrary to the promise in Section V that LAZ, in providing the Payment System, LAZ will not charge "for any parking fees or services provided" and/or that the "parking arrangement is governed by the agreement made . . . as posted at the parking facility location" (i.e., the rate offered in the LAZ sign).

54.     Plaintiff and the class do not state a claim, theory, or argument regarding any interaction with or use of the license plate recognition technology or practices, including any practices regarding use, access to, processing, sharing, storing, maintaining, or securing license plate data.

## CLASS ACTION ALLEGATIONS

55.     Plaintiff brings this class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all other individuals in the following class:

> All persons who during the class period were charged a "Service Fee" by Defendants for parking in a parking lot that contains a LAZ Parking sign, the terms of which provide for parking at an hourly rate based on the duration of the parking session and do not disclose the Service Fee.

56.     Excluded from the class are Defendants, any entity in which Defendants have a controlling interest, any of the officers, directors, or employees of the Defendants, the legal representatives, heirs, successors, and assigns of the Defendants, any employees with Plaintiff's counsels' firms, any Judge to whom this case is assigned, and his or her immediate family. Also excluded from the class is any customer of a parking lot owned, operated, or managed by LAZ which explicitly discloses the application or use of an additional service fee on the parking lot signage.

57.     Plaintiff's claims satisfy the numerosity, typicality, adequacy, commonality, and superiority requirements under Federal Rule of Civil Procedure 23, as set forth more fully below.

11

58.    The persons who fall within the class number are in the thousands, and thus numerosity is satisfied. Because class members are geographically dispersed, joinder of all class members in a single action is impracticable.

59.    Class members are readily ascertainable from information and records in Defendants' possession, custody, or control. Notice of this action can readily be provided to the class.

60.    There are questions of law and fact common to the claims of Plaintiff and the class that predominate over any questions affecting only individual class members. The common questions of law and fact arising from Defendants' actions include:

a.    Whether Defendants are permitted by LAZ Signs to calculate the cost of parking using other factors beyond the parking rate and duration specified in the LAZ Signs;

b.    Whether Defendants are permitted to charge an additional "Service Fee" when such fee is not disclosed within the LAZ Signs;

c.    Whether Defendants breached the terms of the LAZ Signs by invoicing and charging the "Service Fee";

d.    Whether Defendants breached the terms of their Terms & Conditions by invoicing and charging the "Service Fee";

e.    Whether the class sustained damages as a result of Defendants' breaches of contract; and

f.    Whether the class, or a subset of the class, is entitled to declaratory and injunctive relief regarding the proper calculation of the cost of parking.

61.    The common questions of law and fact predominate over any questions affecting only individual persons, and a class action is superior due to uniformity of decision, economy of

scale, efficiency, fairness, and equity it will provide when compared to other methods for resolution of the controversy presented.

62.     Plaintiff's claims are typical of the claims of the class because Plaintiff and class members agreed to terms which did not contain the additional "Service Fee" that Defendants improperly invoiced and charged to each of them through the Payment System.

63.     Plaintiff will fairly and adequately protect and represent the interests of the proposed class, because her interests are aligned with and not antagonistic to, those of the proposed class. She is also represented by counsel who are experienced in pursuing class action litigation in breach of contract cases.

64.     The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications that, as a practical matter, would be dispositive of the interests of other members not parties to adjudications or would substantially impair or impede their ability to protect their interests.

65.     It is impracticable for each member of the class to bring a separate action, and the cost of individual actions would be prohibitively high as to provide no effective remedy. The sheer number of separate actions to resolve these claims outside of a class action would place a substantial burden and cost on the judicial system and carry the prospect of inconsistent decision-making.

## COUNT I: BREACH OF CONTRACT

66.     Plaintiff incorporates by reference the allegations in all prior paragraphs of this Complaint as though fully set forth in this paragraph.

67.     Plaintiff and the class each parked in a parking lot that contains a LAZ Sign that offers parking at an hourly rate based on the duration of the parking session.

68.     By parking in the lot, Plaintiff and the class assented to the terms offered in the LAZ Signs and agreed to pay the stated parking rate within the LAZ Sign.

69.     These events formed valid and enforceable contracts between LAZ and Plaintiff and class members.

70.     Plaintiff and the class substantially performed their obligations under the terms of the contracts.

71.     Through its Payment System, LAZ required additional "Service Fees" that were neither disclosed nor agreed to when customer accepted the offer.

72.     LAZ's actions impermissibly caused the cost of parking for Plaintiff and the class beyond the original agreement between LAZ, Plaintiff, and the class.

73.     LAZ's practice of imposing an extra "Service Fee" is not authorized by contract and results in repeated breaches of the agreements with Plaintiff and the class.

74.     As a direct and proximate result of LAZ's breaches, Plaintiff and the class sustained damages in an amount to be determined at trial.

## COUNT II: BREACH OF CONTRACT – TERMS AND CONDITIONS

75.     Plaintiff incorporates by reference the allegations in all prior paragraphs of this Complaint as though fully set forth in this paragraph.

76.     As an alternative claim, if the Court finds Plaintiff and the class formed a contract that includes the Terms & Conditions, there is a valid and enforceable contract between Defendants LAZ LTD, LAZ Karp, and class members.

77.     In the Terms and Conditions, LAZ represented and promised they would not charge Plaintiff or class members a service fee for services provided.

78.     By imposing an additional "Service Fee" in the amount charged to Plaintiff and class members for parking, Defendants breached the terms of the contracts.

79.     As a direct and proximate result of Defendants' breaches, Plaintiff and the class have sustained damages in an amount to be determined at trial.

## COUNT III: DECLARATORY AND INJUNCTIVE RELIEF

80.     Plaintiff incorporates by reference the allegations in all prior paragraphs of this Complaint as though fully set forth in this paragraph.

81.     An actual controversy exists between Plaintiff and the class, on the one hand, and Defendants, on the other hand, concerning the respective rights and duties of the parties under the LAZ Signs and, separately and in the alternative, the Terms & Conditions.

82.     Plaintiff contends LAZ breached the terms of her and the class's contracts by charging fees in excess of the agreed parking rate offered by the LAZ Signs.

83.     Plaintiff further contends the LAZ Signs exclusively control the contractual relationship between Plaintiff and the class and LAZ.

84.     To the extent the Terms & Conditions form part of the contract between Plaintiff and the class and LAZ, Plaintiff alleges that LAZ: (1) breached the Terms & Conditions by charging fees LAZ represented it would not charge; and (2) breached the Terms & Conditions by exceeding the rates that were offered in the LAZ sign and accepted by the customer.

85.     Plaintiff therefore seeks a declaration of the parties' and the class's respective rights and duties under the LAZ Signs and, separately and alternatively, the LAZ Terms & Conditions and requests the Court declare Defendants' conduct in material breach of the applicable contracts so that future controversies may be avoided.

86.    Plaintiff further seeks an injunction enjoining Defendants from: (1) continuing to engage in conduct that breaches the terms of the LAZ Signs; and (2) continuing to engage in conduct that breaches the terms of the Terms & Conditions, if legally applicable. Plaintiff further seeks an order requiring Defendants to comply with the terms of their stated agreements regarding the calculation of the cost of parking.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, requests relief and judgment against Defendants as follows:

a.  An order certifying the class(es), appointing Plaintiff as a representative of the class, appointing Plaintiff's counsel as class counsel, and directing that reasonable notice of this action, as provided by Rule 23 of the Federal Rules of Civil Procedure, be given to the class;

b.  For a judgment against Defendants for the causes of action filed against them;

c.  For damages in an amount to be proven at trial;

d.  For a declaration that Defendants' actions are in material breach of the applicable contracts;

e.  For appropriate declaratory and injunctive relief, enjoining Defendants from continuing to engage in actions which are in material breach of the applicable contracts;

f.  For pre-judgment and post-judgment interests at the maximum rate permitted by law;

g.  For Plaintiff's costs incurred; and

h.  For such other relief in law or equity as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

/s/ William M. Bloss (CT01008)
William M. Bloss
Koskoff, Koskoff & Bieder, P.C.
350 Fairfield Avenue
Bridgeport, Connecticut 06604
Tel: (203) 336-4421
Fax: (203) 368-3244
bbloss@koskoff.com

and

**SPENCER FANE LLP**

Bryant T. Lamer (pro hac vice forthcoming)
Dane C. Martin (pro hac vice forthcoming)
1000 Walnut St., Suite 1400
Kansas City, Missouri 64106
Telephone: 816.474.8100
Facsimile: 816.474.3216
blamer@spencerfane.com
dmartin@spencerfane.com

17